UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Green Bay Division

---

LIBERTY MUTUAL INSURANCE COMPANY,
INDIVIDUALLY AND AS SUCCESSOR BY MERGER
TO HAWYKEYE-SECURITY INSURANCE
COMPANY; ZURICH AMERICAN INSURANCE
COMPANY AS SUCCESSOR IN INTEREST TO ZURICH
INSURANCE COMPANY, U.S. BRANCH; and
NATIONWIDE MUTUAL INSURANCE COMPANY,

       Plaintiffs,                Case No.:

v.

UNITED STATES FIRE INSURANCE COMPANY,

       Defendant.

---

## COMPLAINT

---

Plaintiffs, Liberty Mutual Insurance Company ("Liberty"), both individually and as successor by merger to Hawkeye-Security Insurance Company ("Hawkeye"), Zurich American Insurance Company as successor in interest to Zurich Insurance Company, U.S. Branch ("Zurich"), and Nationwide Mutual Insurance Company ("Nationwide"), state the following allegations in support of their Complaint against the United States Fire Insurance Company ("U.S. Fire").

### NATURE OF THE ACTION

1. This insurance coverage action arises out of U.S. Fire's refusal to honor its duty to defend and indemnify Masonite Corporation in relation to a personal injury lawsuit filed against Masonite's predecessor, Algoma Hardwoods, Inc. ("Algoma"), in the Superior Court of Los Angeles County, California, styled *Warren v. Algoma Hardwoods, Inc.,* Case No. 20STCV04852 (the "*Warren* Lawsuit").

2. Plaintiffs are a group of insurers who issued excess insurance policies to Algoma that each paid to defend and indemnify Algoma in connection with the *Warren* Lawsuit. More particularly, once the limits of Algoma's primary insurance policies were exhausted, Plaintiffs, along with Fireman's Fund Insurance Company ("FFIC"), another excess insurer that is not a plaintiff in this lawsuit, agreed to defend Algoma and settle the claims asserted in the *Warren* Lawsuit after a significant, but unexpected, verdict against Algoma.

3. U.S. Fire also provided excess insurance coverage to Algoma. Accordingly, U.S. Fire was similarly obligated to pay a proportionate share of Algoma's defense costs and the eventual settlement with the claimants in the *Warren* Lawsuit. Unlike Plaintiffs and FFIC, however, U.S. Fire refused to contribute to Algoma's defense or pay its proportionate share of the settlement in the *Warren* Lawsuit.

4. When U.S. Fire refused to defend and indemnify Algoma, Plaintiffs and FFIC stepped in and combined to cover U.S. Fire's proportionate share of the settlement payment and Algoma's defense costs. Plaintiffs did not make those payments voluntarily. Rather, Plaintiffs paid U.S. Fire's share of defense costs and indemnity to Algoma in order to protect the interests of their common insured, in accordance with their respective coverage obligations to Algoma.

5. By virtue of Plaintiffs' and FFIC's payments, Algoma was made completely whole for its losses, notwithstanding U.S. Fire's refusal to honor its duties to Algoma under its excess policy. Thus, Plaintiffs are totally subrogated to Algoma's interests against U.S. Fire.

6. Plaintiffs now bring this action against U.S. Fire for a declaration of their rights and for reimbursement of the amounts they overpaid due to U.S. Fire's refusal to satisfy its coverage obligations to Algoma.

## THE PARTIES

7. Plaintiff Liberty is a Massachusetts corporation, with its principal place of business in Boston, Massachusetts, and at all times relevant was licensed to issue insurance policies in Wisconsin, including to its subrogor, Algoma. Liberty acquired Hawkeye and is the successor by merger to Hawkeye with respect to the excess policy that Hawkeye issued to its subrogor, Algoma. For purposes of diversity jurisdiction, Liberty is a citizen of Massachusetts.

8. Plaintiff Zurich is a New York corporation, with its principal place of business in Schaumburg, Illinois, and at all times relevant was licensed to issue insurance policies in Wisconsin, including to its subrogor, Algoma. For purposes of diversity jurisdiction, Zurich is a citizen of both New York and Illinois.

9. Plaintiff Nationwide is an Ohio corporation, with its principal place of business in Columbus, Ohio, and at all times relevant was licensed to issue insurance policies in Wisconsin, including to its subrogor, Algoma. For purposes of diversity jurisdiction, Nationwide is a citizen of Ohio.

10. Algoma Hardwoods, Inc., Algoma Door, Inc., and Appalachian Door Co. were former Wisconsin corporations, which merged into Masonite in 2014.

11. Algoma Holding Company was a former Delaware corporation that also merged into Masonite in 2014.

12. Masonite, as the successor by merger to Algoma Hardwoods, Inc. and Algoma Door, Inc., has been fully paid for its entire loss and made whole by Plaintiffs and FFIC pursuant to the defense and indemnity obligations under their respective excess insurance policies. As a result, Masonite is not a necessary party to this action.

13. Upon information and belief, Defendant U.S. Fire is a Delaware corporation with its principal place of business in New Jersey. For purposes of diversity jurisdiction, U.S. Fire is a citizen of both Delaware and New Jersey.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction because the parties are completely diverse, as the controversy is between citizens of different states. Specifically, the Plaintiffs are citizens of Massachusetts, Illinois, New York, and Ohio, while U.S. Fire is a citizen of Delaware and New Jersey.

15. As further detailed below, the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

16. This Court has personal jurisdiction over the defendants pursuant to Federal Rule of Civil Procedure 4(k) and Wis. Stat. §§ 801.05(1)(b)-(d) and 801.05(3).

17. Venue is proper in this district because key events and omissions giving rise to this action occurred in this judicial district.

18. Each of the excess policies issued by Plaintiffs to Algoma, and upon information and belief the excess policy issued by U.S. Fire to Algoma, was issued to Algoma in this judicial district.

19. Algoma paid premiums to each of the Plaintiffs, and upon information and belief to U.S. Fire, in this judicial district.

20. Algoma notified U.S. Fire of its claim for coverage based on the *Warren* Lawsuit and demanded performance in this judicial district.

21. As set forth below, U.S. Fire's performance of its excess policy obligations to Algoma would have occurred in this judicial district.

## COMMON ALLEGATIONS

**The Excess Policies**

22. Each of the Plaintiffs, FFIC, and U.S. Fire issued excess insurance policies to Algoma between 1978 and 1987. Those policies provided excess liability coverage, subject to

4

certain terms and limits, to Algoma once the limits of its underlying primary policies were fully exhausted.

23. Upon information and belief, Hawkeye issued an excess policy, policy number UMB-1-2925, to Algoma for the policy period August 17, 1978 to May 1, 1979 (the "Hawkeye Excess Policy").

24. Liberty acquired Hawkeye, and Liberty is the successor by merger to Hawkeye with respect to the Hawkeye Excess Policy. As such, Liberty is entitled to all of the rights, obligations, promises, conditions, and other terms under the Hawkeye Excess Policy and other applicable law.

25. Further, upon information and belief, the Hawkeye Excess Policy contains a subrogation clause providing generally that Hawkeye shall be subrogated to the rights of the insured, Algoma, in the event of Hawkeye's overpayment of defense or indemnity costs that should have been paid by other insurers, including defendant U.S. Fire.

26. Upon information and belief, Defendant U.S. Fire issued three excess liability insurance policies, policy numbers 523-04369-3, 523-160691-3, and 523-221409-9, to Algoma for the following policy periods, respectively: May 1, 1980 to May 1, 1981; May 1, 1981 to May 1, 1982; and May 1, 1982 to May 1, 1983 (the "U.S. Fire Excess Policies").

27. Plaintiff Zurich issued Commercial Umbrella Liability Policy number 82-05-549 to Algoma for the policy period May 1, 1983 to May 1, 1984 (the "Zurich Excess Policy").

28. The Zurich Excess Policy contains a subrogation clause that states in relevant part:

> Right to recover payment
>
> Any persons for whom we make a payment under this policy must transfer to us their right of recovery against any other party. They must do everything necessary after an occurrence to secure and do nothing to impair these rights.

5

29. Plaintiff Nationwide issued two excess policies, policy numbers 0125-03-089148 and 0136-02-089148, to Algoma for the following policy periods, respectively: May 1, 1984 to May 1, 1985, and May 1, 1985 to May 1, 1986 (the "Nationwide Excess Policies").

30. The Nationwide Excess Policies contain a subrogation clause that states in relevant part:

> The Company shall be subrogated to the extent of any payment under this policy to all of the insured's rights of recovery therefore; the insured shall do nothing after loss to prejudice such rights and shall do everything necessary to secure and enforce all rights of salvage, contribution or indemnity that may affect any obligation of the company under this policy . . . .

31. Plaintiff Liberty issued an excess policy to Algoma, policy number THC-Y91-503613-036, for the policy period May 1, 1986 to May 1, 1987 (the "Liberty Mutual Excess Policy").

32. The Liberty Mutal Excess Policy contains a subrogation clause that states in relevant part:

> The Company shall be subrogated to the extent of any payment under this policy to all of the insured's rights of recovery therefore; the insured shall do nothing after loss to prejudice such rights and shall do everything necessary to secure and enforce all rights of salvage, contribution or indemnity that may affect any obligation of the company under this policy . . . .

**U.S. Fire Refuses to Contribute to the Settlement of the *Warren* Lawsuit.**

33. On or about February 6, 2020, Deanne and Craig Warren sued Algoma for personal injuries based on alleged exposure to asbestos arising from products manufactured by Algoma. The Warrens' claims against Algoma were prosecuted in the *Warren* Lawsuit referenced above.

34. A portion of the Warrens' claims was tried to verdict, and an adverse verdict was rendered against Algoma on May 20, 2022. Specifically, the jury awarded the Warrens approximately $43 million, assigning 50% liability to Algoma.

6

35. On or about May 25, 2022, Algoma notified RiverStone Resources (which administers the policies issued by U.S. Fire to Algoma) of the adverse verdict in the *Warren* Lawsuit.

36. After providing notice to U.S. Fire, Algoma pursued an appeal of the adverse judgment in the *Warren* Lawsuit.

37. In late 2022, while the *Warren* appeal was pending, Algoma and the Warrens negotiated a settlement of Mr. Warren's future wrongful death claim, which was not part of the verdict rendered on May 20, 2022. This settlement payment was funded by Algoma's primary insurers, and the payment significantly depleted the available limits of the primary insurers.

38. In November 2023, while Algoma's appeal was still pending, Algoma and the Warrens settled the claims that were tried in the *Warren* Lawsuit for $13.75 million. This settlement was memorialized in a stipulated judgment.

39. The November 2023 stipulated judgment exhausted the remaining limits of Algoma's primary insurance coverage and reached into Algoma's excess policies. More specifically, approximately $11.8 million of the $13.75 million stipulated judgment exceeded the primary insurance limits and fell within the limits of U.S. Fire's, FFIC's, and Plaintiffs' excess insurance policies.

40. After receiving notice of the adverse verdict in the *Warren* Lawsuit in late May 2022, U.S. Fire was informed about all the subsequent settlement discussions with the Warrens. Despite receiving such information, U.S. Fire refused to contribute to the $11.8 million that exceeded the primary insurers' limits of coverage. U.S. Fire argued that it received late notice of the *Warren* claim, thereby allegedly eliminating its obligation to defend and indemnify Algoma.

7

41. U.S. Fire's late notice argument is meritless. The notice provisions in the U.S. Fire Excess Policies state that notice shall be given "as soon as practicable" upon "the happening of an occurrence reasonably likely to involve [U.S. Fire] hereunder." Simply stated, Algoma did not reasonably expect the *Warren* Lawsuit to implicate its excess insurance policies, including the U.S. Fire Excess Policies, until the surprising adverse verdict was rendered on May 20, 2022.

42. For example, approximately one month before trial, the Warrens' counsel demanded $1.5 million to settle the case. That amount was far below the remaining limits of Algoma's primary insurers.

43. During trial, the Warrens' highest demand was $4 million, which was also within the remaining limits of Algoma's primary insurers.

44. Prior to verdict, Algoma reasonably believed that its exposure in the *Warren* Lawsuit was well below the remaining limits of its primary coverage. This reasonable belief was supported by the analysis of Algoma's defense counsel and their experience in other asbestos claims. *See U.S. Fire Ins. Co v. Green Bay Packaging, Inc.,* 66 F. Supp. 2d 987 (E.D. Wis. 1999).

45. Accordingly, Algoma had no obligation to provide notice to U.S. Fire prior to the May 20, 2022 verdict in the *Warren* Lawsuit. Algoma provided notice to U.S. Fire as soon as practicable—within five days—of the adverse *Warren* verdict.

46. Even if Algoma provided late notice (it did not), U.S. Fire was not prejudiced by the timing of such notice. If U.S. Fire had received earlier notice of the *Warren* Lawsuit, U.S. Fire would not have become actively involved in Algoma's defense or done anything differently based on the reports of defense counsel and the amount of primary coverage remaining.

8

47. Despite the defects in its late notice defense, U.S. Fire maintained that it had no duty to contribute its proportionate share toward the settlement of the *Warren* Lawsuit.

48. Based on its years of coverage, U.S. Fire was (and still is) responsible for 34.446% of the *Warren* Lawsuit settlement that exceeded the primary limits of coverage—*i.e.,* 34.446% of $11,837,204.35, or $4,077.443.41.

49. Without U.S. Fire's participation, Plaintiffs and FFIC were forced to cover U.S. Fire's share of the settlement and pay a disproportionate amount to indemnify Algoma for the settlement of the *Warren* Lawsuit.

50. In addition to U.S. Fire failing to indemnify Algoma for the *Warren* Lawsuit settlement, U.S. Fire also refused to contribute towards Algoma's defense from the time the primary insurers' limits were exhausted until U.S. Fire ultimately agreed to start contributing towards Algoma's defense on or about January 9, 2024.

51. During this time that U.S. Fire refused to participate in Algoma's defense, Plaintiffs and FFIC again stepped in to cover U.S. Fire's share of Algoma's defense fees and costs.

52. Algoma has been fully compensated for its losses related to the *Warren* Lawsuit.

53. U.S. Fire has been unjustly enriched by Plaintiffs' overpayment of Algoma's defense costs and indemnification of Algoma. U.S. Fire was contractually obligated to contribute to the defense and indemnification of Algoma in the proportionate amount that is consistent with the duration of its coverage. U.S. Fire refused to do so, however, and was unjustly enriched by retaining and investing the amount of money that it was obligated to pay for its proportionate share of the defense and indemnity costs incurred by the excess insurers once Algoma's primary insurance was exhausted.

## COUNT ONE FOR DECLARATORY JUDGMENT

54. Plaintiffs reallege and incorporate by reference the above paragraphs as if fully stated herein.

55. There is an actual, justiciable controversy between Plaintiffs and U.S. Fire regarding U.S. Fire's obligation to pay its proportionate share of (a) the settlement of the *Warren* Lawsuit; and (b) the fees and costs incurred in connection with the defense of Algoma from the date of exhaustion of its primary policies' limits to January 9, 2024.

56. More particularly, U.S. Fire maintains it had no duty to defend or indemnify Algoma in relation to the *Warren* Lawsuit because Algoma did not provide timely notice to U.S. Fire. Plaintiffs, in contrast, maintain that U.S. Fire received timely notice and, in any event, was not prejudiced by the timing of Algoma's notice, thereby obligating U.S. Fire to defend and indemnify Algoma in relation to the *Warren* Lawsuit.

57. A declaratory ruling by the Court would resolve this controversy. For example, by declaring that Algoma provided timely notice of the *Warren* Lawsuit to U.S. Fire or that U.S. Fire was not prejudiced by the timing of Algoma's notice, the Court would eliminate U.S. Fire's only excuse for not contributing with Plaintiffs towards the defense and settlement of the *Warren* Lawsuit.

58. This Court has the authority to declare that U.S. Fire was responsible for paying (a) its proportionate share of the settlement of the *Warren* Lawsuit consistent with its duration of coverage; and (b) its proportionate share of Algoma's defense fees and costs incurred after the exhaustion of the primary limits of coverage. *See* 28 U.S.C. §§ 2201 (a), 2202.

59. Based on its authority and the pending controversy between the parties, the Court should declare that (a) U.S. Fire received timely notice of the *Warren* Lawsuit or, alternatively, that U.S. Fire was not prejudiced by the timing of its receipt of notice of the

10

Case 1:26-cv-00027-BBC    Filed 01/07/26    Page 10 of 15    Document 1

*Warren* Lawsuit; (b) U.S. Fire is responsible for paying its proportionate share of the settlement of the *Warren* Lawsuit; and (c) U.S. Fire is responsible for paying its proportionate share of Algoma's defense fees and costs incurred after the exhaustion of the primary limits of coverage, whether in the *Warren* Lawsuit or otherwise.

## COUNT TWO FOR EQUITABLE CONTRIBUTION

60. Plaintiffs reallege and reincorporate paragraphs 1-59 as if fully set forth herein.

61. Plaintiffs and U.S. Fire were jointly and severally responsible to Algoma for both (a) the settlement payment in the *Warren* Lawsuit that exceeded the primary insurers' limits; and (b) the fees and costs incurred in connection with the defense of Algoma from the date of exhaustion of its primary policies' limits to January 9, 2024.

62. Despite this common and shared obligation, U.S. Fire did not fulfill its duty to defend or indemnify Algoma, leaving Plaintiffs and FFIC to shoulder U.S. Fire's duty to indemnify and defend Algoma. As a consequence, Plaintiffs paid more than their fair share of the settlement. Similarly, by paying a significant portion of U.S. Fire's share of Algoma's defense fees and costs from the date the primary policies were exhausted until January 9, 2024, Plaintiffs paid more than their fair share of Algoma's defense.

63. To address the inequity of paying more than their fair share, Plaintiffs are entitled to contribution from U.S. Fire for its fair share of the settlement paid in the *Warren* Lawsuit. Plaintiffs' collective overpayment exceeds $3.3 million, which should be paid by U.S. Fire. Likewise, Plaintiffs are entitled to contribution from U.S. Fire for its fair share of the defense fees and costs paid by Plaintiffs from the date of exhaustion of its primary policies' limits to January 9, 2024.

## COUNT THREE FOR SUBROGATION/BREACH OF CONTRACT

64. Plaintiffs reallege and reincorporate paragraphs 1-63 as if fully set forth herein.

65. At all times relevant, Algoma had enforceable excess insurance contracts with U.S. Fire for the policy years May 1, 1980 to May 1, 1981; May 1, 1981 to May 1, 1982; and May 1, 1982 to May 1, 1983.

66. In general, the U.S. Fire Excess Policies require U.S. Fire to indemnify Algoma for damages that exceed the underlying limits of Algoma's primary policies and fall within the limits of the U.S. Fire Excess Policies.

67. In addition to indemnifying Algoma, the U.S. Fire Excess Policies require U.S. Fire to defend Algoma upon the exhaustion of Algoma's primary policies.

68. The primary policies underlying the U.S. Fire Excess Policies were exhausted upon settlement of the *Warren* Lawsuit in November 2023. The settlement of the *Warren* Lawsuit triggered U.S. Fire's duty to indemnify Algoma under its Excess Policies.

69. Algoma complied with its notice obligations and other conditions to coverage under the U.S. Fire Excess Policies.

70. Despite Algoma's compliance with its obligations, U.S. Fire has failed to comply with its obligations under the U.S. Fire Excess Policies. Namely, U.S. Fire failed to indemnify Algoma for its 34.446% share of the settlement in the *Warren* Lawsuit in excess of the underlying primary policies. U.S. Fire also failed to defend Algoma from the date of exhaustion of the primary policies until U.S. Fire ultimately acknowledged its duty to defend on January 9, 2024.

71. U.S. Fire's refusal to indemnify and defend Algoma constituted a material breach of the U.S. Fire Excess Policies.

72. As a result of U.S. Fire's material breach of its policies, Plaintiffs were forced to pay more than their share to cover U.S. Fire's missing contribution. Specifically, Plaintiffs paid more than $9.7 million towards the settlement of the *Warren* Lawsuit, including

12

$3,361,156.23 that should have been paid by U.S. Fire. Plaintiffs' payments of U.S. Fire's share of the settlement were not voluntary.

73. Likewise, Plaintiffs paid sums in an amount to be determined by the trier of fact to defend Algoma from around November 2023 through January 9, 2024, including defense costs that should have been paid by U.S. Fire. Plaintiffs' payments of U.S. Fire's share of Algoma's defense fees and costs were not voluntary.

74. By virtue of their overpayment toward the settlement of the *Warren* Lawsuit, Plaintiffs have become completely subrogated to the rights of Algoma, in proportion to their respective indemnity overpayments as set forth further below:

    a. As a direct and proximate result of U.S. Fire's breach of its excess policies, Plaintiff Hawkeye became obligated to pay and did pay $502,808.55, *above* its own proportionate share of indemnity to Algoma under the Hawkeye Excess Policy.

    b. As a direct and proximate result of U.S. Fire's breach of its excess policies, Plaintiff Zurich became obligated to pay and did pay $716,144.42 *above* its own proportionate share of indemnity to Algoma under the Zurich Excess Policy.

    c. As a direct and proximate result of U.S. Fire's breach of its excess policies, Plaintiff Nationwide became obligated to pay and did pay $1,428,135.51 *above* its own proportionate share of indemnity to Algoma under the Nationwide Excess Policies.

    d. As a direct and proximate result of U.S. Fire's breach of its excess policies, Plaintiff Liberty became obligated to pay and did pay $714,067.75 *above* its own proportionate share of indemnity to Algoma under the Liberty Mutual Excess Policy.

75. By virtue of their overpayments toward the defense of Algoma since the exhaustion of the primary policies, Plaintiffs have become completely subrogated to the rights of Algoma, in proportion to their respective overpayments, in an amount to be determined at trial.

76. U.S. Fire has refused to reimburse Plaintiffs for U.S. Fire's share of indemnification and defense costs that Plaintiffs incurred due to U.S. Fire's material breach.

77. As subrogees to Algoma, Plaintiffs are entitled to their damages from U.S. Fire's breach of its excess policies in an amount to be determined at trial, but in no event lower than the amounts identified above.

## COUNT FOUR FOR UNJUST ENRICHMENT

78. Plaintiffs reallege and reincorporate paragraphs 1-53 as if fully set forth herein.

79. By paying the entire settlement of the *Warren* Lawsuit above the primary limits and all of Algoma's defense costs and fees between exhaustion of the primary limits and January 9, 2024, Plaintiffs have conferred a benefit on U.S. Fire. Specifically, U.S. Fire has benefitted by retaining over $3.3 million that it should have contributed with Plaintiffs towards the settlement of the *Warren* Lawsuit and Algoma's defense fees and costs.

80. At all relevant times, U.S. Fire had knowledge of the benefit conferred upon it by Plaintiffs. In fact, U.S. Fire had the opportunity to avoid its unjust enrichment, but it chose to disregard its obligations and force Plaintiffs to shoulder them.

81. Thus, U.S. Fire knowingly accepted the benefits conferred upon it by Plaintiffs, and it has retained the value of those benefits through the present time.

82. It would be inequitable to allow U.S. Fire to continue to retain the benefit of the payments made on its behalf.

83. U.S. Fire should account for its unjust enrichment by reimbursing Plaintiffs for the amounts they have paid on U.S. Fire's behalf.

**WHEREFORE**, Plaintiffs respectfully request the Court to enter judgment in favor of Plaintiffs and against U.S. Fire as follows:

A. Declaring that U.S. Fire owed Algoma a duty to defend and indemnify pursuant to the U.S. Fire Excess Policies (Count I);

B. Awarding Plaintiffs the amounts they have overpaid for the settlement of the *Warren* Lawsuit and for the defense of Algoma (Counts II, III, and IV);

C. Awarding Plaintiffs their costs and expenses incurred in this proceeding, including reasonable attorneys' fees, as allowed by law, as well as pre- and post-judgment interest allowed by law; and

D. Granting any further relief that this Court deems proper and just.

Dated this 7th day of January 2026.  **GASS TUREK LLC**

*Attorneys for Plaintiffs, Liberty Mutual Insurance Company, Individually and as Successor by Merger to Hawkeye-Security Insurance Company, Zurich American Insurance Company as successor in interest to Zurich Insurance Company, U.S. Branch, and Nationwide Mutual Insurance Company*

s/David J. Turek
David J. Turek, WBN 1035356
241 N. Broadway, Suite 300
Milwaukee, Wisconsin 53202
(414) 223-3300 – phone
(414) 224-6116 – fax
turek@gassturek.com